# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 2:17-cr-20344-JPM-1 |
| DIMITAR PETLECHKOV, | ) ) ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT

This cause is before the Court on the objections of Defendant, Dimitar Petlechkov, through his counsel, to portions of the Pre-Sentence Report. (ECF No. 102).

On November 11, 2017, the Grand Jury indicted Petlechkov on 20 counts of interstate carrier fraud. (ECF No. 1). A superseding indictment was returned by the Grand Jury on January 25, 2018. (ECF No. 23). Defendant pled not guilty to the charges contained in the superseding indictment and proceeded to a jury trial on April 2, 2018. (ECF No. 28.)

On April 4, 2018, the jury returned a verdict of guilty on all 20 counts set out in the superseding indictment. (ECF No. 64).

Pursuant to the jury verdict, a Pre-Sentence Investigation report was prepared and filed on June 4, 2018. (ECF No. 82.) On June 21, 2018, the United States filed its position paper, raising no objection to the Pre-Sentence Report. (ECF No. 86.) On July 12, 2018, Defendant filed his position paper, including four exhibits. (ECF No. 102). Defendant specifically objected to the loss calculation (PSR ¶ 16, 23) of $1,515,250.43 and asserted that, under U.S. Sentencing

Guideline §2B1.1 cmt. n.3(B), the loss purposes for sentencing should be the $367,099.62 that constituted the defendant's profits. Defendant asserts that this calculation is correct because the loss "cannot reasonably be determined for several reasons." Defendant filed under separate seal information regarding discount pricing agreements that related to shippers who were involved in the interstate shipping activities as to which Defendant provided "discounted" shipping services using a fraudulently obtained discounted FedEx account. (ECF No. 102.)

The United States filed its sentencing memorandum on July 18, 2018 opposing defendant's position and relying on the assertion that the Court must reasonably estimate the amount of loss from fraud using the preponderance of the evidence standard. (ECF No. 106.) The United States emphasized that the Court need to only make a reasonable estimate of the loss consistent with sentencing guideline § 2B1.1, relying on United States v. Kraus, 656 F. App'x. 736, 741 (6th Cir. 2016). The Government asserts that the Court should use the fair market value while consistently taking the victim's perspective. The Government asserted that, applying the correct formulation, the loss amounts to $1,515,250.43 based on the Standard List Rate of FedEx Corporation.

Defendant, in a subsequent filing, also asserted that he is entitled to a two-point reduction for acceptance of responsibility based on a deposition that Defendant gave in a civil case brought by a FedEx Corporation in the Northern District of Georgia. (ECF No. 109.) Alternatively, Defendant argues that, if a two-point reduction is denied for acceptance of responsibility, the Court should nevertheless grant a downward variance in light of Defendant's pre-indictment sworn admissions that he "lied to FedEx for the purpose of obtaining shipping discounts he wasn't entitled to receive." (ECF No. 109 at 3.)

On July 24, 2018, a hearing was held as to Defendant's objections to the Pre-Sentence Report. The United States called two witnesses, Doug Howard and Wes Shipley, both of whom are FedEx employees. A total of ten exhibits were introduced, including a calculation of loss (Exhibit 3) and an adjusted statement of loss report (Exhibit 4).

At the conclusion of the hearing, the United States argued that the Court could make a "reasonable estimate" of the loss, using one of the two methodologies explained by Doug Howard and Wes Shipley. The methodologies take into consideration the information currently available and are appropriate and practicable under the circumstances. While the United States continued to argue that the total loss as reflected in paragraph sixteen of the Pre-Sentence Report ($1,515,250.43) is appropriate under the circumstances, the Government advanced an alternative theory reflecting an adjusted loss calculation of $801,219.02. This figure reflects a 33% average discount which takes into consideration the fact that the shippers who utilized Defendant's fraudulently obtained General Dynamics discounts in fact had "legitimately negotiated shipping discounts which were applicable during the period of the scheme for which Dimitar Petlechkov will be sentenced." (Sealed Stipulation for Sentencing, ECF No. 110.)

Defense counsel argued that other discounts, credits, and adjustments reflected in FedEx's invoices make it impossible to reasonably estimate the loss and, therefore, that the Court should use the stipulated profits of the Defendant ($367,099.52) because the loss cannot reasonably be determined.

It is correct that the loss calculation of $1,515,250.43 is based on the Standard List Rates. The Court credits the testimony of Mr. Howard and agrees that this calculation accurately reflects the point of view of the victim. One million five hundred fifteen thousand two hundred fifty dollars and forty-three cents is the actual loss reflecting the additional income FedEx would

have received using the FedEx Standard List Rates for the shipments during the course of the fraudulent scheme. Mr. Howard specifically testified that the pricing agreement shipping rates that would have applied to the third party shippers "are not applicable because [the third party shippers] did not ship on their own accounts."

The Government concedes, however, that a more conservative calculation of loss using the average of the discounts available to the shippers who utilized the Defendant's services results in the alternative $801,219.02 calculation. While Mr. Howard explained that this number does not reflect a weighted comparison, it represents all invoices and applies a 33% discount. While discounts varied from over 60% to as low as 10%, Mr. Howard specifically testified "I could not do a weighted comparison . . . FedEx keeps shipping level data for 24 months" and that information is no longer available.

While Defendant argues that even the alternative $801,219.02 figure inadequately takes into consideration credits and adjustments, the evidence supports the conclusion that the Government's alternative calculation is reasonable under the circumstances. While there may be a few shipping incidences where "service failure," "credits," or "adjustments" are not fully taken into consideration, the evidence preponderates in favor of the conclusion that the alternative calculation by Mr. Howard should be accepted. There is no dispute in this case that approximately 63,000 packages were shipped under account 1589—the fraudulently utilized account in this case. There are a total of 744 invoices. Mr. Howard did an approximate, but accurate, calculation of the potentially applicable discounts, determining that a 33% average discount fairly represents the legitimate shipper discounts available to those companies if they had shipped using their own discounts. See Exhibit 4. While all of the invoices list third party shippers, all invoices were billed to Defendant Petlechkov. Defendant paid a total of

$648,481.10 for shipping services that had a standard rate price of $2,041,731.63. See Testimony of Wes Shipley. Therefore, FedEx's lost shipping pricing opportunity is accurately stated to be $1,515,250.43. It appears that these third parties shippers were entitled to no discount because of the methodology used in the shipping process through Defendant Petlechkov. It is fair to say, however, that shipping through Petlechkov without the substantial and illegal discounts that he offered would have been economically unattractive. Logically, shippers would then have utilized their own pricing agreements, thus reducing the income that the victim, FedEx, would have received. It is this rationale that results in the alternative calculation which the Court adopts as factual finding in this case.

## CONCLUSION

Defendant's objection to the loss calculation as contained in the Pre-Sentence Report is GRANTED IN PART and DENIED IN PART. Paragraph 23 of the Report is adjusted to reflect an offense level increase of 14. The Court will consider Defendant's request for a two-point reduction for acceptance of responsibility at a sentencing hearing to be set by a letter to follow this order.

**SO ORDERED**, this 7th day of August, 2018.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE